All right, Mr. Brown. Good morning, your honors. My name is Montgomery Brown. I was appointed to represent Daeron Merritt in the Southern District of Iowa. Mr. Merritt went to trial as the court is aware, multiple counts of drug felony events, including conspiracy to distribute cocaine and felon possession. He was found not guilty at 924 C. He ultimately received a 180 month within guidelines. Mr. Merritt has asked me to raise various issues on appeal, discovery issue, jury instruction matter, preservation of a rehab issue, prior conviction, qualification, and the substantive reasonableness of his sentence. With the court's permission, I'd like to talk about the denial of the requested buyer-seller instruction of the form that we requested from the Seventh Circuit as it were applied to the conspiracy charge in the case. Mr. Merritt advocates that in some circumstances, the may be more appropriate than underlying Eighth Circuit precedent. I don't interpret Eighth Circuit precedent as saying a buyer-seller instruction would never apply except in circumstances where there's a single or disparate distribution. Rather, I interpret the Eighth Circuit precedent as saying that if the former applies, then I have to seek in-bank argument as opposed to request for one panel to overturn prior precedent. I'm proceeding onto the presumption that this is an abuse of discretion type argument. Thank you. Counsel, looking at our circuit precedent, it seems in large measure to turn on quantity involved in the multiplicity of transactions. Here, there is a very substantial quantity involved. What's the response to our applying our circuit precedent to sales involving the very substantial conspiracy quantities involved here? My answer is simple. That is, there were a lot of people involved. The jury found Mr. Merritt was involved, yes, and made a number of specific distributions. But some of those specific distributions, in fact, most of them were relatively small quantities to end users. The confidential informant, if I may have this incorrect, made at least three buys from his residence. They were relatively small amounts, or at least he met her at a bar on one of the occasions, one of the occasions at her residence. The point is that it's not entirely accurate to say that Mr. Merritt was shoveling large quantities out at any particular given of time, although the government presented evidence that he attempted to acquire some and proceeded to Chicago on at least three or four occasions to acquire larger amounts. There's a whole bunch of people involved, and my argument is that this elusive association of nitwits, if I called them, and I probably shouldn't have called them that, selling grams here, four grams there, some larger quantities, is not always a conspiracy made, because there's always a source of supply. There's always a middleman. There's always sub-distributors and users. That's the nature of the beast, and whether there's consignment or some credit arrangements or fronting, that does not necessarily mean that there's some larger agreement to distribute as an entity in a conspiratorial basis, and Mr. Merritt's position is that more leniency with respect to the buyer-seller instruction from the Seventh Circuit makes it clearer to the jury, as Judge Bright said in his dissent in a case that I cited in Eighth Circuit, Conway, that it makes it easier for the jury to discern whether or not there's a differential between some large conspiracy or conspiratorial joint venture and a loose-knit association of people where it's impossible to avoid there being a source of supply. This is Judge Smith. What was the nature of the testimony of the co-conspirators with regard to Merritt's involvement? In sum, from the informant who testified at trial and co-conspirator testimony and co-conspirator statements was that Mr. Merritt was reportedly the brains of the outfit. Mr. Merritt had a brother. He had some sub-distributors, but not exclusively as the recipient of the source of supply in Des Moines of the cocaine, but that seemed to be the gist of it, Your Honor. Okay. Now, if the Eighth Circuit precedent establishes the proposition, such as Boykin, that a buyer-seller instruction is never proper when there are multiple sales or fronting or associates, we're asking this panel to, at least in this particular case, revisit that analysis for the reasons I've asserted. I think they have some merit when you look at how the Seventh Circuit precedent establishes a buyer-seller instruction. Mr. Brown, your time is leaving quickly. Did you wish to address the rehafe argument, or do you want to reserve the remainder of your time for rebuttal? Your Honor, I'll reserve that for rebuttal. Thank you. My pleasure. Mr. Kearnt. May it please the Court, Mr. Brown. My name is Adam Kearnt. I was co-counsel for the government for this case throughout the proceedings of the District Court, including Mr. Merritt's trial and sentencing. I'll go ahead and start, Your Honor, with the buyer-seller issue here. This is not the case that this Court should consider based upon the facts and the evidence present. Any change to the long-standing position of this circuit with respect to when a buyer-seller instruction is appropriate, simply put, as Judge Ebinger specifically set forth in her record here, and that's in the trial transcript volume four at page 695, she set forth what the evidence she had heard at trial was and how that evidence specifically, and in her view, which I believe to be correct, unequivocally cuts against a buyer-seller instruction. The evidence here, Your Honors, is that Mr. Merritt participated extensively in this cocaine trafficking conspiracy. The evidence here is that Mr. Merritt was the head of that conspiracy in the Des Moines area. The evidence here is that Mr. Merritt traveled to Chicago on four occasions to purchase not small quantities of cocaine, but significant quantities of cocaine. Two ounces, seven ounces, nine ounces, 11 ounces during those trips. The evidence at trial with respect to those quantities was supported both by interceptions as well as co-conspirator information. In addition to those four trips to substantial quantities of cocaine for his redistribution, Chicago sources delivered to him in Des Moines. They traveled to Des Moines to his location, his residence, and delivered approximately one half kilogram of cocaine on approximately March 7 of 2019. They traveled again about a week later to Des Moines and distributed 200 grams of cocaine to Mr. Merritt. In addition to that, Mr. Merritt had a completely separate source of cocaine, separate from Chicago. That source is referred to in the trial transcript and information as a Texas source. They're referred to as a Texas source because they had a Texas area code and the interceptions indicated that that source was bringing the cocaine directly across the Southern border. The evidence supportive that that Texas source actually brought cocaine to Mr. Merritt and it to some customers. He made multiple sales to a confidential source in Mr. Merritt's alleyway behind his residence. And those were relatively small amounts, eight balls, three grams, approximately two to three grams. However, Mr. Merritt had multiple customers. He had multiple customers, some of which were receiving relatively small amounts, but some of which were receiving larger amounts. One does not receive over two kilograms of cocaine in a relatively short period and make money and further and move the product by selling eight balls only. Mr. Merritt had others who were just receiving more substantial amounts and they were redistributing them. I would note there was trial testimony with respect to a co-conspirator named Jose Sanchez, who also lived in Des Moines. He was receiving cocaine through Mr. Merritt, along with Mr. Merritt from sources and police found just shy of a half kilogram of cocaine in Mr. Sanchez's residence the day that the search warrants occurred throughout Des Moines. The day that the loaded firearm at his home and he had digital scales in the home, digital scales in his SUV. He had a ease in everything that one would need to distribute cocaine. Simply put your honors, this is not the case where the buyer seller instruction would be appropriate in any regard. With respect to the other issues, your honor, I believe that the rehafe issue is laid out clearly in my set of my brief. However, I would simply put that here, Mr. Merritt did not make a request for the additional instruction that he is asking for now in the district court. It struck accurately on the issue post-rehafe. There was no error in the instruction given whatsoever, let alone plain error. With respect to the other issues, your honor, I think this time I will rely upon my brief, but I'm happy to answer any questions that the court may have. I don't see any questions. Thank you, Mr. Current. Thank you, your honor. Mr. Brown, your rebuttal. You're muted, Mr. Brown. Mr. Brown, you're muted. There you go. My apologies, your honor. One point as to the buyer-seller matter, when the search warrant was executed or during the course of this extremely elaborate investigation, they found no money to associate any profit-making activity with the buyer-seller matter. Nothing to show for what the government claimed was a massive conspiracy of what he was the head of. He had a junky SUV that hardly ran, and that's it. We think that would have been important for the jury to contrast with a buyer-seller instruction. With regard to the rehab issue, your honor, it's true that Mr. Merritt stipulated to a prior drug felony conviction within 15 years and having a sentence over one year. That much is true, and it wasn't denied, but Mr. Merritt believes that rehab is an evolving area and seeks preservation in the event there is a possible further interpretation of the U.S. Supreme Court case to require that the jury had to know that he knew that he was specifically a prohibited person as a result of that qualifying conviction. So that's why I've raised that issue, your honor. It was not preserved at the district court level, I acknowledge that, but in the event that there's some further interpretation or elaboration, we've sought to preserve that issue. That's all I have on these brief points, your honor. It's been my pleasure. Thank you. Thank you, Mr. Brown. The court also notes that you have your client under the Criminal Justice Act, and we extend our gratitude to you for your willingness to serve in that capacity. Thank you.